

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_Michelle V. Larson_

_____
**United States Bankruptcy Judge**

**Signed July 8, 2021**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| **POGO ENERGY, LLC,** | § | Case No. 21-31224-MVL |
| Debtor. | § | |

### INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

[Relates to Docket No. 9]

On the _Emergency Motion for an Interim and Final Order Authorizing Use of Cash Collateral_ [Docket No. 9] (the "**Motion**")[1] of Pogo Energy, LLC (the "**Debtor**"), requesting an interim and final order (a) authorizing the Debtor to use Cash Collateral (as defined below), and (b) setting a final hearing on the Debtor's continued use of Cash Collateral; and an interim hearing (the "**Hearing**") having been held by this Court on July 6, 2021; and this Court having considered the Motion, the exhibits attached thereto, the _Declaration of Phillip Terry in Support of First Day_

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Motions and Applications* [Docket No. 11], the *Declaration of Wayne Scott in Support of Debtor's Emergency Motion for Interim and Final Order Authorizing Use of Cash Collateral* [Docket No. 9-2] (together, the "**First Day Declarations**"), and the evidence submitted and the record made at the Hearing; and due, proper and sufficient notice of the Motion, having been given in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures ("**Bankruptcy Rules**"), and the Local Bankruptcy Rules of this Court ("**Local Rules**"); and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by this Court; and it appearing to this Court that granting the relief requested in the Motion on an interim basis is fair and reasonable and in the best interests of the Debtor, its estate, and its stakeholders, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A. <u>Petition Date; Debtor in Possession</u>. On July 1, 2021 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor in possession under §§ 1107(a) and 1108 of the Bankruptcy Code. No official committee ("**Committee**") has been appointed in this chapter 11 case (the "**Chapter 11 Case**").

B. <u>Jurisdiction</u>. This Court has core jurisdiction over this Chapter 11 Case, this Motion, the parties, and property affected hereby pursuant to 28 U.S.C. § 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. <u>Notice</u>. Proper, timely, adequate and sufficient notice of the Motion and the Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and

the Local Rules, and no other or further notice of the Motion or the entry of this Interim Order was

or shall be required, except as set forth in paragraph 23.

      D.    <u>Debtor's Stipulations</u>.  Without prejudice to the rights of any party other than the

Debtor (but subject to the limitations thereon contained in paragraphs 5 and 6) the Debtor admits,

stipulates, and agrees as follows (the "**Debtor's Stipulations**"):

    (i)    <u>Energy Services Agreements</u>.  Luminant Energy Company LLC ("**Luminant**") and the Debtor are parties to (i) that certain Energy Marketing Support Agreement, dated as of September 25, 2017; (ii) that certain EEI Master Power Purchase and Sale Agreement, including without limitation that certain Cover Sheet thereto, effective as of September 25, 2017; (iii) that certain Security Agreement, dated as of September 25, 2017 (the "**Security Agreement**"); and (iv) that certain Deposit Account Control Agreement, dated as of October 26, 2017 (the "**Disbursement Agreement**") ((i) through (iv), collectively, the "**Energy Services Agreements**").

    (ii)    <u>Prepetition Obligations</u>.  As of the Petition Date, the Debtor was liable to Luminant pursuant to the Energy Services Agreements not less than (i) $27,744,438.62 in respect of due and unpaid amounts pursuant to the Energy Services Agreements, *plus* (ii) $514,830 in respect of letters of credit issued on behalf of the Debtor, subject to the provision of documentation to the Debtor substantiating that such expenses were incurred by Luminant on the Debtor's behalf, *plus* (iii) accrued and unpaid interest, fees, expenses (collectively, the "**Prepetition Obligations**").

    (iii)    <u>Prepetition Liens and Prepetition Collateral</u>.  As more fully set forth in the Security Agreement and documents related thereto, prior to the Petition Date, the Debtor granted to Luminant, for the benefit of itself, a security interest in and continuing lien on (the "**Prepetition Liens**") substantially all of the Debtor's assets and property, including any and all cash of the Debtor existing as of the Petition Date (the "**Prepetition Collateral**").

    (iv)    <u>Validity, Perfection, and Priority of Prepetition Liens and Prepetition Obligations</u>.  The Debtor acknowledges and agrees that as of the Petition Date (i) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected; (ii) the Prepetition Liens were senior in priority over any other liens; (iii) the Prepetition Obligations constitute valid and binding obligations of the

Debtor; (iv) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (v) the Debtor waives any right to challenge any of the foregoing.

(v)     <u>Cash Collateral</u>. All of the following constitutes cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, "**Cash Collateral**") and Prepetition Collateral of Luminant, and Luminant has a legal, valid, binding, unavoidable, and properly perfected security interest in all such Cash Collateral: (a) all of the Debtor's existing cash; (ii) all cash constituting proceeds, products, rents, or profits of property of Prepetition Collateral (including any amounts generated by the collection of accounts receivable, the sale of inventory, or other disposition of the Prepetition Collateral existing as of the Petition Date or arising or acquired after the Petition Date); and (iii) all cash subject to Luminant's rights of setoff. For the avoidance of doubt, Cash Collateral does not include cash that is subject to refund to retail customers for the prepayment of electricity services, which the Debtor holds in trust pursuant to Public Utility Commission of Texas ("**PUCT**") Regulation 25.107(f)(2)(C).[2] .

E.     <u>Consent</u>. Subject to the terms and conditions of this Interim Order, Luminant consents to the Debtor's use of the Cash Collateral through the date of the Final Hearing (the "**Interim Period**").

F.     <u>Findings Regarding Cash Collateral.</u>

(i)     <u>Need for Use of Cash Collateral</u>. Good and sufficient cause has been shown for the entry of this Interim Order. The Debtor has an immediate and critical

---

[2] PUCT Regulation 25.107(f)(2)(C) reads as follows: "In lieu of the requirements of subparagraph (B) of this paragraph, a REP certified pursuant to paragraph (1)(B) of this subsection that is providing electric service under the provisions of §25.498 of this title (relating to Retail Electric Service Using a Customer Prepayment Device or System) shall be required to keep all deposits and an amount sufficient to cover the credit balance that exceeds $50 for all customer accounts that have a credit balance exceeding $50 at the close of each month in an escrow account, or to provide an irrevocable stand-by letter of credit payable to the commission in an amount equal to or greater than the amount required to be deposited in the escrow account."

need to use Cash Collateral in order to permit the orderly continuation of the operation of its businesses and to satisfy other working capital.

(ii)     <u>Terms and Conditions of Use of Cash Collateral</u>.  As a condition to use Cash Collateral, Luminant requires, and the Debtor has agreed, that Luminant's Cash Collateral shall be used in a manner consistent with the terms and conditions of this Interim Order and in accordance with the Budget (as defined below).

(iii)    <u>Luminant Interest in Cash Collateral</u>.  Luminant has interests in any and all cash of the Debtor.  The Debtor is not able to use Cash Collateral without the Prepetition Secured Parties' consent or this Court's authorization after notice and a hearing.

(iv)    <u>Luminant Adequate Protection</u>.  To protect Luminant's interests in the Prepetition Collateral due to any diminution in value of its interests in the Prepetition Collateral from and after the Petition Date resulting from the use of Cash Collateral, the use, sale, or lease of Prepetition Collateral, the imposition of the automatic stay or the granting of a lien (collectively, the "**Diminution in Value**"), Luminant is entitled to receive, and the Debtor has agreed to provide, adequate protection pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code.  The terms of this Interim Order are fair and reasonable and reflect the Debtor's prudent exercise of business judgment.

(v)     <u>Good Faith</u>.  The adequate protection provided herein and the use of the Prepetition Collateral have been negotiated in good faith and at arm's length among the Debtor and Luminant.

G.     <u>Sections 506(c) and 552(b)</u>.  In light of Luminant's agreement to permit the use of its Cash Collateral as set forth herein, Luminant has requested that the rights and benefits of section 552(b) of the Bankruptcy Code apply and that, upon entry of the Final Order, (i) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (ii) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

Based upon the foregoing findings and conclusions, the Motion, and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.  <u>Motion Granted</u>. The Motion is granted on an interim basis as set forth herein. Any formal or informal objections to the Motion with respect to the entry of this order (the "**Interim Order**") that have not been withdrawn, waived or settled, and all reservations of rights in connection with any such objections to the Motion, are hereby denied and overruled on the merits.

2.  <u>Authorization to Use Cash Collateral</u>.

    (a)   <u>Use of Cash Collateral</u>. Pursuant to sections 105(a), 363(b), and 363(c)(2) of the Bankruptcy Code, the Debtor is hereby authorized to use Cash Collateral during the Interim Period in accordance with this Interim Order and for the uses and purposes, and at the times, set forth in the Budget.

    (b)   <u>Ongoing Cash Deposits</u>. All collections received (whether by wire or check) by the Debtor from and after the Petition Date shall comprise Cash Collateral and be deposited by the Debtor in that certain collection account that is subject to a Deposit Control Agreement with Luminant (the "**DACA Account**").

3.  <u>Adequate Protection of Luminant</u>. Luminant is entitled to adequate protection of its interests in the Prepetition Collateral in an amount equal to the aggregate Diminution in Value of Luminant's interests in the Prepetition Collateral from and after the Petition Date (the "**Adequate Protection Claim**"). As adequate protection, subject to the provisions of paragraphs 5 and 6, Luminant is hereby granted the following:

    (a)   <u>Adequate Protection Liens</u>. As security for the Adequate Protection Claim, effective and perfected as of the Petition Date and without the necessity of the execution by the Debtor (or recordation or other filing) of documents, or the possession or control by Luminant of any property, pursuant to section 361(2) and (3) and section 363(e) of the Bankruptcy Code,

Luminant is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest (collectively, the "**Adequate Protection Liens**"), subject and subordinate only to the Carve Out, in all Prepetition Collateral and all other tangible and intangible prepetition and postpetition property in which the Debtor has an interest, whether existing on or as of the Petition Date or thereafter acquired, including without limitation, any and all unencumbered cash, inventory generated or produced after the Petition Date, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, vehicles, deposit accounts, patents, copyrights, trademarks, tradenames, tax attributes, rights under license agreements and other intellectual property, capital stock of subsidiaries of the Debtor and the proceeds of all of the foregoing (collectively, with the Prepetition Collateral and Cash Collateral, the "**Collateral**"); *provided* that the Collateral shall exclude any of the Debtor's claims and causes of action arising under chapter 5 of the Bankruptcy Code (collectively, the "**Avoidance Actions**") but, subject to entry of the Final Order, Luminant has requested that the Collateral shall include all proceeds or property recovered from Avoidance Actions. For the avoidance of doubt, subject to entry of a Final Order, the Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Petition Date and without the necessity of the execution by the Debtor, or the filing of, as applicable, mortgages, security agreements, pledge agreements, control agreements, financing statements, state or federal notices, recordings (including, without limitation, any recordings with the United States Patent and Trademark or Copyright Office), or other agreements and without the necessity of taking possession or control of any Collateral. The Adequate Protection Liens shall be valid, binding and enforceable against any trustee or other estate representative appointed in

any case, upon the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code (a "**Successor Case**") and/or upon the dismissal of the Chapter 11 Case or Successor Case.

(b)     <u>Superpriority Claim</u>.  Superpriority claims for the benefit of Luminant against the Debtor pursuant to section 507(b) of the Bankruptcy Code (the "**Superpriority Claim**"), subject and subordinate only to the Carve Out, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtor, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code.  No cost or expense of administration under sections 105, 503(b) or 507(b) of the Bankruptcy Code shall be senior to, or pari passu with, the Superpriority Claim granted to Luminant.

(c)     <u>Budget and Variance Reporting</u>.

(i)     <u>Initial and Subsequent Budgets</u>.  Attached as **<u>Schedule 1</u>** hereto and incorporated herein by reference is a 13-week cash flow forecast for the Debtor (the "**Budget**"), including the anticipated uses of the Cash Collateral for such period.  Every four (4) weeks following entry of the Interim Order, on the first business day following such four-week period, the Debtor shall provide Luminant with an updated Budget for the subsequent 13-week period. The initial Budget and each subsequent Budget shall be in form and substance reasonably acceptable to Luminant, and each such subsequent Budget shall be deemed to constitute the "Budget" for purposes of this Interim Order unless counsel to Luminant has notified counsel for the Debtor in writing within five (5) business days following delivery thereof that such proposed budget is not reasonably acceptable to Luminant.  In the event of such notification, the prior approved Budget shall remain in full force and effect.

(ii)     <u>Variance Reporting</u>.  On the final business day of each calendar week following entry of this Interim Order beginning with the second full week following the

Petition Date, the Debtor shall provide to Luminant variance report/reconciliation (the "**Budget Variance Report**") setting forth in reasonable detail actual cash receipts and disbursements for the prior week for the Debtor and all variances, in each case, on both an individual line item basis and an aggregate basis, as compared to the then applicable Budget, on a cumulative weekly basis commencing with the second full week after the Petition Date, together with a statement confirming compliance with the Budget Covenants set forth below. The Budget Variance Report shall include an explanation, in reasonable detail, of any material variance. The Budget Variance report shall also include the number of customer accounts and the number of accounts in good standing,[3] along with a comparison to the accounts that existed as of the Petition Date.

      (iii)      <u>Budget Testing</u>. The Debtor shall comply with each of the following obligations in respect of the Budget (collectively, the "**Budget Covenants**"): (i) the Debtor shall not have an unfavorable variance, measured on a cumulative basis, of 20% more of the aggregate operating cash flow (including any expenditures reflected in the Budget), to be tested and reported (x) on a weekly basis for the prior week and (y) on a weekly basis for the cumulative period since the Petition Date, with the initial testing date occurring on July 16, 2021; and (ii) the Debtor shall not make any disbursement of a type not contemplated by the Budget without the prior written consent of Luminant. Commencing with the third full week after the Petition Date, the Debtor (or other appropriate representatives) shall attend a weekly call with representatives from Luminant to discuss the materials delivered to Luminant in the prior week.

      (iv)      <u>Payment of Postpetition Expenses</u>. The Debtor shall pay all postpetition operating expenses in the ordinary course of business (subject to the approved Budget)

---

[3] For the purposes of this Order, a customer in "good standing" is a customer who (1) has a credit balance with the Debtor, (2) has a debit balance with the Debtor for fewer than five days, or (3) has a debit balance with the Debtor but is not disconnected for non-pay due to PUCT regulations such as, but not limited to, DNP moratoriums for extreme weather, or customer billing disputes.

and shall provide Luminant with a monthly report of incurred but unpaid operating expenses (other than unpaid expenses to Luminant) promptly following each month-end close.

(d) <u>Access to Records; Continuance of Maintenance of Insurance and Licenses</u>.

(i) <u>Access to Records</u>. Upon reasonable notice, at reasonable times during normal business hours, the Debtor shall permit representatives, agents, and employees of Luminant to have reasonable access to (i) inspect the Debtor's properties and (ii) all information (including historical information and the Debtor's books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtor and other company advisors (during normal business hours), and Luminant (and its advisors) shall be provided with reasonable access to all information they shall reasonably request, including, without limitation, information regarding (x) the Debtor's operations, financials, key business partners and contracts, including without limitation, customer contracts, but excluding any information for which confidentiality is owed to third parties, information subject to attorney client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law.

(ii) <u>Continuance of Maintenance and Insurance and Licenses</u>. The Debtor shall continue to maintain and insure the Prepetition Collateral in the ordinary course of business in accordance with the Debtor's prepetition practices or in accordance with separate order of the Court and shall remain in current and in good standing with all existing licenses and other regulatory requirements to continue operating in the ordinary course of business.

(e) <u>Maintaining Hedge Positions</u>. The Debtor shall, unless approved by Luminant in writing in its sole discretion, maintain in place all current hedge positions and implement such additional hedging, in form and substance reasonably acceptable to Luminant, as

is necessary and customary for the Debtor's anticipated energy requirements taking into consideration all relevant factors, including seasonality, and Luminant shall accordingly continue to provide hedging, sleeving and credit facility services as required under the Energy Services Agreements, subject to payment by the Debtor of all applicable fees under the Energy Services Agreements.

(f) <u>Right to Seek Additional Adequate Protection</u>. This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, Luminant's rights to request further or alternative forms of adequate protection at any time or the rights of the Debtor or any other party to contest such request.

4. <u>Modification of the Automatic Stay</u>. The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified to the extent necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to (a) permit the Debtor to grant the Adequate Protection Liens and the Superpriority Claim; (b) permit the Debtor to perform such acts Luminant may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to Luminant under this Interim Order; and (d) authorize the Debtor to pay, and Luminant to retain and apply, payments made in accordance with the terms of this Interim Order.

5. <u>Challenge Period</u>. Subject to entry of the Final Order, the Debtor's Stipulations shall be binding upon the Debtor and any successors thereto and all other parties in interest, including any Committee or any chapter 7 or chapter 11 trustee appointed or elected for the Debtor (a "**Trustee**") for all purposes, unless (a) a party in interest, including a Committee if appointed, with requisite standing has properly commenced a proceeding (a "**Challenge**") by no later than ninety (90) days from the date of entry of this Interim Order or such later date as has been ordered

by the Court for cause upon a motion filed and served before such deadline (the "**Challenge Period**"); and (b) a final order is entered by a court of competent jurisdiction sustaining a duly commenced Challenge.

6. <u>Debtor's Stipulations</u>. If no Challenge is timely commenced in accordance with paragraph 5, without further order of this Court (a) the Debtor's Stipulations shall be binding on all parties in interest; (b) the Prepetition Obligations shall constitute allowed claims; and (c) the Prepetition Obligations and the Adequate Protection Liens shall not be subject to any other or further Challenge.

7. <u>Credit Bid</u>. Subject to the requirements of section 363(k) of the Bankruptcy Code, Luminant shall have the right to credit bid under section 363(k) of the Bankruptcy Code all or any portion of its claims in connection with a sale of the Debtor's assets, without the need for further order of the Court, and whether the sale is effectuated under section 363 of the Bankruptcy Code, under a chapter 11 plan of reorganization for the Debtor, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise. For the avoidance of doubt, Luminant shall be deemed a qualified bidder (or such analogous term) in connection with any such sale.

8. <u>Termination; Event of Default</u>. Authorization to use Cash Collateral shall automatically terminate without further order from the Court on the earlier of (x) October 1, 2021 or (y) if an Event of Default (defined below) occurs and remains uncured for more than five business (5) days following the delivery of written notice (email to suffice) from Luminant to Debtor's counsel noticing the occurrence such Event of Default. "**Event of Default**" means the occurrence of any of the following:

(a) the Debtor fails to perform any of its obligations in accordance with the terms of this Interim Order (including adherence to the Budget and Budget Covenants);

(b)     the occurrence of a postpetition default under one or more of the Energy Services Agreements;

(c)     the number of active customer accounts in good standing serviced by the Debtor as of the Petition Date shall decline by more than 20%, which shall be tested on a weekly basis in connection with the Budget Variance Report;

(d)     The Debtor supports, commences, or joins as an adverse party in any suit or other proceeding against Luminant relating to the Prepetition Obligations, the Energy Services Agreements or the Prepetition Collateral, including any proceeding seeking to avoid or require repayment of any payments to Luminant;

(e)     any disclosure or statement of the Debtor provided to Luminant proves to have been knowingly false or misleading in any material respect;

(f)     the Debtor files a motion seeking to create any postpetition liens or security interests, other than those granted or permitted pursuant to this Interim Order;

(g)     the Court shall enter an order approving any claims for recovery of amounts surcharging any of the Collateral, or otherwise approving any claim or surcharge relating to or arising from the preservation of any Collateral, in each case, under section 552(b) or section 506(c) of the Bankruptcy Code

(h)     the entry of an order in any court reversing, staying, vacating or modifying the terms of this Interim Order;

(i)     a chapter 11 trustee or examiner with expanded powers is appointed in the Chapter 11 Case;

(j)     the Chapter 11 Case is dismissed; or

(k)     the Chapter 11 Case is converted to a case under chapter 7.

9.     <u>Rights and Remedies Upon Event of Default</u>.   Upon occurrence of an Event of

Default and following the giving of five (5) business days' written notice to counsel to the Debtor,

counsel to any Committee appointed in the Chapter 11 Case, counsel to the Electric Reliability

Council of Texas, and the U.S. Trustee (the "**Remedies Notice Period**"), Luminant may exercise

the remedies available to it under this Interim Order and applicable non-bankruptcy law, including,

but not limited to, revoking the Debtor's right to use Cash Collateral and collecting and applying

any proceeds of the Collateral consistent in all material respects with the terms of this Interim

Order and the Energy Services Agreements; *provided*, that, during the Remedies Notice Period,

the Debtor shall be entitled to continue to use Cash Collateral in accordance with the terms of this

Interim Order.   During and following the Remedies Notice Period, the Debtor may request that

this Court order the continued use of Cash Collateral without the consent of Luminant and, if such

order is granted, the Debtor may continue to use Cash Collateral subject to the terms of this Interim

Order or any other order of the Court authorizing the use of Cash Collateral.   Unless the Court

orders otherwise, at the end of the Remedies Notice Period, the Debtor shall automatically, without

further notice or order of the Court, no longer have the right to use Cash Collateral, the automatic

stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated at the end

of the Remedies Notice Period, without further notice or order of the Court, and Luminant shall

be permitted to exercise all rights and remedies set forth in this Interim Order, the Energy Services

Agreements, and as otherwise available at law without further order or application or motion to

the Court, including, without limitation, foreclosing upon and selling all or a portion of the

Collateral in order to collect any amounts payable to Luminant pursuant to this Interim Order and

apply the same to repay the Prepetition Obligations, without restriction or restraint by any stay

under sections 362 or 105 of the Bankruptcy Code.   Notwithstanding anything herein to the

contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder. The delay or failure to exercise rights and remedies under this Interim Order or the Energy Services Agreements shall not constitute a waiver of Luminant's rights thereunder or otherwise. Notwithstanding the occurrence of the Event of Default, all of the rights, benefits and protections provided to Luminant shall survive the termination of this Interim Order due to such Event of Default.

10. <u>Limitations on the Use of Cash Collateral</u>. Notwithstanding anything herein to the contrary, the Debtor shall not assert or prosecute, and no portion of the proceeds of the Collateral, including any Cash Collateral or the Carve Out, and no disbursements set forth in the Budget, shall be used in connection with (a) preventing, hindering, or delaying Luminant's enforcement or realization upon any of the Collateral in accordance with the Energy Services Agreements once an Event of Default has occurred and is continuing and after the Remedies Notice Period has expired; (b) objecting or challenging or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Obligations or the Collateral (as applicable), or any other rights or interest of Luminant; (c) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against Luminant or any of its respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, or employees; or (d) paying any amount on account of any claims arising prior to the Petition Date or any non-ordinary course administrative claims unless such payments are (i) approved by an order of this Court and (ii) in accordance with the Budget Covenants.

11. <u>Cash Management</u>. Subject to further order of the Court, the Debtor shall maintain its cash management arrangements in all material respects in a manner consistent with that

described in the applicable order approving the motion seeking authorization to continue the Debtor's cash management arrangements.

12. <u>Effectiveness</u>. Bankruptcy Rules 4001, 6004, and 6006 of the Bankruptcy Rules are satisfied by the Motion and upon record at the Hearing. This Interim Order shall be immediately effective upon its entry and without any stay of execution or effectiveness.

13. <u>Waiver of Surcharge Claims; No Marshaling</u>. Subject to and effective only upon entry of the Final Order and the terms thereof, Luminant has requested that no costs or expenses of administration which have been or may be incurred in the Chapter 11 Case any time, or any future proceeding that may result therefrom, including any Successor Case, shall be charged against or recovered from Luminant or any of its claims or the Collateral (including the Prepetition Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of Luminant, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by Luminant or any of its representatives, agents, or lenders. Upon entry of the Final Order, Luminant has requested that the Debtor and its estate shall be deemed to have irrevocably waived, and shall be prohibited from asserting, any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs incurred, including those in connection with the preservation, protection, or enhancement of, or realization by, Luminant, upon the Collateral. In addition, subject to entry of the Final Order and the terms thereof, Luminant has requested that Luminant shall not be subject to the equitable doctrine of marshaling or any similar doctrine.

14. <u>Section 552(b)</u>. Upon entry of the Final Order, Luminant has requested that Luminant shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall

not apply to Luminant with respect to proceeds, product, offspring, or profits of any of the Collateral (including the Prepetition Collateral).

15. <u>Proofs of Claim</u>. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of this Chapter 11 Case or Successor Case to the contrary, Luminant will not be required to file proofs of claim in any of this Chapter 11 Case or Successor Case for any claim described herein, and the Debtor's Stipulations in paragraph D herein shall be deemed to constitute a timely filed proof of claim for Luminant.

16. <u>Carve Out</u>.

(a) <u>Priority of Carve Out</u>. Notwithstanding anything to the contrary in this Interim Order, the Debtor's obligations to Luminant, and the liens, security interests, and superpriority claims granted herein and/or under the Energy Services Agreements, including, without limitation, the Prepetition Liens, the Superpriority Claim, the Adequate Protection Liens, and the Adequate Protection Claim, shall be subject in all respects and subordinate to the Carve Out (defined below).

(b) <u>Carve Out Trigger Notice</u>. As used in this Interim Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses of the Professional Persons (as defined below); *provided* that such fees and expenses do not exceed the amount of fees and expenses provided for in the approved Budget (the "**Allowed Professional Fees**") incurred by

persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the date of delivery by Luminant of a Carve Out Trigger Notice (as defined below) (the "**Termination Declaration Date**"), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $50,000 incurred following delivery the Termination Declaration Date, to the extent allowed at any time, whether by interim order, procedural order, or otherwise; *provided*, that under no circumstances shall any success, completion, or similar fees be payable from the Carve Out following delivery of a Carve Out Trigger Notice; *provided*, *further* that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii) or (iv) above, on any other grounds (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by Luminant to the Debtor, its lead restructuring counsel, the U.S. Trustee, and counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of an Event of Default and upon termination of the Debtor's right to use Cash Collateral by Luminant, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(c)     No Direct Obligation To Pay Allowed Professional Fees.  Luminant shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Case or any Successor Case or

other case under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate Luminant, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

(d)     <u>Payment of Carve Out On or After the Termination Declaration Date</u>. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

17.     <u>Survival</u>.

(a)     The provisions of this Interim Order, including the Adequate Protection Obligations and all other respective rights and remedies of Luminant granted by the provisions of this Interim Order, and any actions taken pursuant hereto shall survive (and shall not be modified, impaired, or discharged by) entry of any order (a) confirming any plan of reorganization in this Chapter 11 Case, except to the extent explicitly agreed to therein by the Debtor and Luminant (in its sole discretion), (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) dismissing the Chapter 11 Case or any Successor Case, or (d) approving the sale of any Collateral (including any Prepetition Collateral) pursuant to section 363(b) of the Bankruptcy Code. The terms and provisions of this Interim Order, including, without limitation, the granting of the Adequate Protection Liens and Superpriority Claim, and the other protections granted to Luminant pursuant to this Interim Order, shall continue in full force and effect notwithstanding entry of any such order.

(b) If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the validity and enforceability of the Adequate Protection Obligations granted in connection therewith.

18. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

19. <u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

20. <u>Necessary Action</u>. The Debtor and Luminant are each authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

21. <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction to enforce the provisions of this Interim Order.

22. <u>Objections</u>. Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be filed on the docket via ECF no later than July 23, 2021 at 4:00 p.m. (Prevailing Central Time).

23. <u>Final Hearing</u>. The Final Hearing is scheduled for **July 28, 2021**, at **2:00 p.m**. (Prevailing Central Time) before this Court. The Debtor shall serve copies of this Interim Order: (a) upon any party that the Debtor believes will be directly affected by the Motion and Interim Order, (b) upon any party that has filed a request for notices with this Court, (c) the Office of the United States Trustee; (d) the Debtor's 20 largest unsecured creditors; and (e) any Committee, if appointed.

**### End of Order ###**

**AGREED AS TO FORM**

FERGUSON BRASWELL FRASER KUBASTA PC

 /s/ *Rachael L. Smiley*
Rachael L. Smiley (State Bar. No. 24066158)
Alex Campbell (State Bar No. 24095536)

2500 Dallas Parkway, Suite 600
Plano, TX 75093
Phone: 972-378-9111
rsmiley@fbfk.law
acampbell@fbfk.law

*PROPOSED COUNSEL FOR*
*DEBTOR IN POSSESSION*

GIBSON, DUNN & CRUTCHER LLP

 /s/ *Michael A. Rosenthal*
Michael A. Rosenthal (State Bar No. 17281490)
Michael L. Raiff (State Bar No. 00784803)

2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Phone:   214-698-3100
mrosenthal@gibsondunn.com
mraiff@gibsondunn.com

and

Matthew G. Bouslog (admitted *pro hac vice*)
Irvine, CA 92612
Phone: 949-451-3800
mbouslog@gibsondunn.com

*COUNSEL FOR*
*LUMINANT ENERGY COMPANY LLC*